Susan F. Halman, State Bar No. 111511
Elizabeth A. Doyle, State Bar No. 194536
SELVIN WRAITH HALMAN LLP
505 14th Street, Suite 1200
Oakland, CA 94612
Telephone:  (510) 874-1811
Facsimile:  (510) 465-8976
E-mail:   shalman@selvinwraith.com
E-mail:   edoyle@selvinwraith.com

Attorneys for Plaintiff
KINSALE INSURANCE COMPANY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINSALE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>HDI GLOBAL SPECIALTY, SE, *successor by merger to* INTERNATIONAL INSURANCE COMPANY OF HANNOVER LIMITED,<br><br>    Defendant. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION** |

Plaintiff Kinsale Insurance Company ("Kinsale") for its Complaint for Declaratory Judgment and Equitable Contribution against defendant HDI Global Specialty, SE, *successor by merger* to International Insurance Company of Hannover Limited ("HDI"), hereby alleges:

## I.   PARTIES

1. Plaintiff Kinsale Insurance Company is an Arkansas corporation engaged in the business of insurance, and authorized to and doing business within the State of California. Kinsale insured Del Mar Pacific Acquisition Corp. dba Del Mar Pacific

1

1. General Contractors Inc. ("Del Mar") as the named insured under several commercial general liability insurance policies, more specifically identified below.

2. Defendant HDI Global Specialty SE is the successor by merger to International Insurance Company of Hannover Limited ("HDI"), a foreign corporation organized and existing under the laws of Germany, with its principal place of business located in Hannover, Germany. On information and belief, HDI is registered as a Societas Europea ("SE") under the European Company statute.

3. HDI insured subcontractor Carlos Ontiveros dba CG Ontiveros Construction General Contractor ("Ontiveros") as the named insured on commercial general liability insurance policies under which Del Mar qualifies as an additional insured.

## II.   JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the amount in controversy, exclusive of interest and costs, exceeds $75,000, the parties are a citizen of the United States and a citizen of a foreign state, who has consented to jurisdiction in California, and an actual justiciable controversy exists between plaintiff and defendant within the meaning of 28 U.S.C. §2201 regarding the scope and extent of insurance coverage provided under HDI's commercial general liability policy to defend and indemnify Del Mar in an underlying construction defect lawsuit pending in the Superior Court of California, County of Orange, as more particularly described below.

5. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to this claim occurred in the County of Orange, and the underlying lawsuit is being prosecuted in the County of Orange, which is situated in this district.

## III.   NATURE OF THE CASE

6. This lawsuit is an insurance coverage action arising from an underlying construction defect lawsuit titled *Niguel Beach Terrace Condominium Association v.*

1  *Del Mar Pacific Acquisition Corp., a California corporation, and Does 1 through 150,*
2  *inclusive,* Orange County Superior Court Case No. 30-2017-00902398-CU-CD-CXC
3  ("the *Niguel Beach* Action").  A true and correct copy of the *Niguel Beach* Complaint
4  is attached hereto as Exhibit A.

5      7.    The underlying plaintiff, Niguel Beach Terrace Condominium
6  Association ("Niguel"), is a residential condominium community located at 34118
7  Selva Road in Dana Point, California.  In March 2013, Del Mar entered into two
8  contracts with Niguel to act as general contractor for Phases I and II of repair work on
9  buildings consisting of removal and replacement of windows and sliding doors, repair
10 and replacement of siding, painting, and installation of stainless-steel flashing ("the
11 Project").

12     8.    Del Mar subcontracted a portion of the work on the Project to HDI's
13 named insured, Ontiveros, pursuant to two written Subcontracts under which Ontiveros
14 agreed to perform the work on the windows and sliding glass doors, and agreed to
15 obtain insurance coverage for Del Mar as an additional insured on Ontiveros' general
16 liability insurance policies, which included the policy issued by HDI.  Ontiveros
17 performed its work at the Project from June 1, 2013 through February 11, 2014.

18     9.    The *Niguel Beach* Action alleges that Del Mar and Ontiveros negligently
19 constructed and installed the windows, sliding glass doors, stucco, waterproofing,
20 siding and wood trim, resulting in water intrusion damage to the residential units.
21 Niguel seeks to recover damages for the cost to repair the damages to individual
22 residences, the cost to correct the allegedly defective work, and other economic
23 damages.  Because the *Niguel Beach* Action seeks to hold Del Mar liable for damages
24 because of "property damage" to the residential units arising from Ontiveros'
25 performance of work under the Subcontracts, HDI has a duty to defend and indemnify
26 Del Mar in the *Niguel Beach* Action.

27         **IV.   THE DEL MAR – ONTIVEROS SUBCONTRACTS**
28     10.    Del Mar and Ontiveros entered into two Subcontracts under which

Ontiveros agreed to perform work on Phases I and II, respectively, at the Project. In both Phases, Ontiveros agreed to remove and replace windows and sliding glass doors at condominium units throughout the Property. Although the two Subcontracts used different forms, each require Ontiveros to obtain coverage for Del Mar as an additional insured to Ontiveros' liability insurance policies on a primary and non-contributory basis.

11. On May 6, 2013, Del Mar and Ontiveros entered into a *Subcontract Agreement* for job number "3112 – Phase I" of the Project ("May 2013 Subcontract"), a true and correct copy of which is attached as <u>Exhibit B</u>, hereto. The May 2013 Subcontract is a 17-page agreement comprised of Articles 1 through 4, and Attachments "A" Preliminary Lien Information, "B" Insurance Requirements, "C" Guarantee, and "D" Accounting Instructions. The Subcontract was signed and each page was initialed by the principals of Ontiveros and Del Mar.

12. In Article 4. General Subcontract Provisions of the May 2013 Subcontract, paragraph G. BONDS, INSURANCE AND INDEMNITY required Ontiveros to purchase and maintain commercial general liability insurance covering its work at the Project, including coverage for completed operations, which coverage shall be "primary insurance and fully collectible prior to any other insurance either the Owner or Contractor [Del Mar] may have, […]." [Exh. B, May 2013 Subcontract, ¶ G. h)(2)].

13. Article 4., paragraph G. of the May 2013 Subcontract also required Ontiveros to name "Owner and Contractor [Del Mar]" as "Additional Insureds" under its general liability policies and to include coverage for acts or omissions of additional insureds in connection with their supervision of Ontiveros' work. [Exh. B,¶ G. h)(3)]. Attachment "B" Insurance Requirements further states:

> Del Mar Pacific must receive a certificate of insurance from your insurance carrier(s) **prior to commencement of work**. To avoid any delays in your payment, your certificate must be exactly as described in this guideline.

4
COMPLAINT FOR EQUITABLE CONTRIBUTION
AND DECLARATORY RELIEF                                                                                CASE NO.

…

Del Mar Pacific Acquisition Corp. dba Del Mar Pacific General Contractors must be named as **ADDITIONAL INSURED**. Additional insured endorsement must be attached to certificate.

14. On October 4, 2013, Del Mar and Ontiveros entered into a second contract, titled SUBCONTRACT (*Long Form Subcontract Between General Contractor and Subcontractor*) dated October 4, 2013, identified as Subcontract no. "3124-06170" for Phase II of the Project ("October 2013 Subcontract"). A true and correct copy of the October 2013 Subcontract is attached hereto as Exhibit C.

15. The October 2013 Subcontract is a 24-page agreement comprised of Articles 1 through 20, and a Signature Page executed by principals of Ontiveros and Del Mar. Article 10. INSURANCE of the October 2013 Subcontract states, in pertinent part:

### ARTICLE 10

### INSURANCE

10.1 <u>Subcontractor's Insurance</u> – Prior to start of its work, Subcontractor shall procure for its work and maintain in force … Comprehensive or Commercial General Liability Insurance on an occurrence basis, and any other insurance required of Subcontractor by the Subcontract Documents. Contractor shall be named as additional insured on each of these policies except for Workers' Compensation. Subcontractor shall also name as additional insured all other parties identified in the Contract to be so named. Subcontractor's insurance shall include contractual liability insurance covering Subcontractor's obligations under the Subcontract, including all indemnification provisions included in the Subcontract. Subcontractor shall provide completed operations coverage and maintain the same in full force for the duration of Subcontractor's work.

* * *

(Exh. C, October 2013 Subcontract, ¶ 10.1)

16. Paragraph 10.2 of the October 2013 Subcontract required Ontiveros to obtain commercial general liability insurance with limits of liability of $1 million per

occurrence, and $2 million aggregate.

17. Ontiveros provided Del Mar with a Certificate of Insurance and attached Additional Insured endorsement (form CG 20 10 10 01) to HDI policy no. HAN 000404 13, identifying "Del Mar Pacific General Contractor, Inc." as an additional insured Organization.

18. Del Mar and Ontiveros performed work on the Project beginning in March 2013 and continuing through February 2014, while HDI policy no. HAN 000404 13 was in effect.

## V. THE UNDERLYING *NIGUEL BEACH* ACTION

19. On February 9, 2017, Niguel filed the Complaint in the *Niguel Beach* Action against Del Mar and Does 1 through 150, alleging causes of action for: (1) Breach of Contract; (2) Negligence; (3) Strict Liability; and (4) Breach of Implied Warranty. On March 27, 2017, Niguel sued Ontiveros as Doe 1 to the *Niguel Beach* Complaint.

20. The *Niguel Beach* Action seeks damages, attorney's fees, and investigation costs from Del Mar and Ontiveros on the grounds that Del Mar and Ontiveros negligently installed the windows and sliding glass doors, and caused damage to work performed by others and to the Niguel condominium owners' units.

21. Ontiveros performed all of the window and sliding glass door installation work that is the subject of Niguel's claims in the *Niguel Beach* Action.

## VI. THE HDI POLICY

22. HDI issued to Ontiveros a primary Commercial General Liability policy bearing policy no. HAN 000404 13 (effective from May 7, 2013 to May 7, 2014) ("the HDI Primary Policy") providing coverage under ISO form CG 00 01 12 07, including coverage for "bodily injury" and "property damage" that is caused by an "occurrence" and that takes place during the HDI policy period. A true and correct copy of the HDI Primary Policy is attached hereto as Exhibit D and is incorporated herein by reference.

6

COMPLAINT FOR EQUITABLE CONTRIBUTION
AND DECLARATORY RELIEF                                        CASE NO.

23. The Insuring Agreement of the HDI Primary Policy includes the following provisions:

> SECTION I - COVERAGES
>
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. Insuring Agreement
>
>    a. We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or 'suit' that may result. …
>
>    b. This insurance applies to "bodily injury" and "property damage" only if:
>       (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
>       (2) The "bodily injury" or "'property damage" occurs during the policy period; …

(Exh. D, Form CG 00 01 12 07, at pg. 1.)

24. The HDI Primary Policy contains the *Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization* endorsement stating:

> **ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION**
>
> This endorsement modifies insurance provided under the following:
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> **SCHEDULE**
>
> **Name of Person or Organization:**
> DEL MAR PACIFIC GENERAL CONTRACTOR, INC.
> NIGUEL BEACH TERRACE HOA ASSOCIATION DBA DEL MAR PACIFIC ACQUISITION CORP.
> 153 N. HIGHWAY 101, STE 200
> SOLANA BEACH, CA 92075

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.**   **Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

**B.**   With respect to the insurance afforded to these additional insureds, the following exclusion is added:

**2. Exclusions**
This insurance does not apply to "bodily injury" or "property damage" occurring after:

**(1)** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

**(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

(Exh. D, Form CG 2010 ed. 10/01.)

## VII. THE KINSALE POLICY

25.   Kinsale first issued to Del Mar Pacific Contractors, Inc. a primary Commercial General Liability policy no. 0100006071-0, in effect from June 2, 2012 to June 2, 2013. The Kinsale policy was renewed as policy no. 0100006071-1, in effect from June 2, 2013 to June 2, 2014 ("the Kinsale Policy"). The Kinsale Policy provides Commercial General Liability Insurance Coverage under ISO form CG 00 01 10 01, including coverage for "bodily injury' and 'property damage" which is caused by an "occurrence" and which takes place during the policy period. A true and correct copy of Kinsale Policy no. 0100006071-1, is attached hereto as Exhibit E and all are

incorporated herein by reference.

26. Since March 21, 2017, Kinsale has been defending its named insured, Del Mar, in the *Niguel Beach* Action under Coverage A. Bodily Injury and Property Damage Liability of the Kinsale Policy, which includes the following provision in Section **IV** – Commercial General Liability Conditions:

> **4. Other Insurance**
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:
>
> **a. Primary Insurance**
>
> This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.
>
> **b. Excess Insurance**
>
> This insurance is excess over:
>
> . . .
>
> (2)   Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

(Exh. E, Form CG 00 01 10 01, pg. 11.)

### VIII.   KINSALE ACCEPTS DEL MAR'S TENDER OF DEFENSE

27. On March 2, 2017, Del Mar tendered its defense and indemnification in the *Niguel Beach* Action to Kinsale under the Kinsale Policy.

28. On March 21, 2017, Kinsale accepted Del Mar's tender of defense of the *Niguel Beach* Action subject to a reservation of rights, and engaged the law firm of

Clinton & Clinton ("Clinton law firm") to defend and protect Del Mar's interests in the *Niguel Beach* Action.

29. To date, Kinsale has paid in excess of $88,000.00 for attorneys' and expert's fees and litigation costs to defend Del Mar in the *Niguel Beach* Action, and continues to incur fees and costs as the lawsuit proceeds.

### IX. DEL MAR'S TENDERS TO HDI

30. On June 19, 2017, Del Mar's defense counsel at the Clinton law firm promptly tendered Del Mar's defense and indemnity of the *Niguel Beach* lawsuit to HDI under the Additional Insured endorsement to the HDI Primary Policy.

31. On July 11, 2017, HDI denied coverage to Del Mar on the grounds that its Additional Insured endorsement "does not provide coverage for completed operations and that the *Niguel Beach* lawsuit does not arise out of the ongoing operations of Del Mar Pacific Acquisition Corp. dba Del Mar Pacific General Contractor."

32. By letter dated February 22, 2019, Kinsale's counsel, on behalf of Kinsale and Del Mar, re-tendered Del Mar's defense of the *Niguel Beach* Action to HDI on the grounds that HDI's denial was erroneous under California law set forth in *Pulte Home Corp. v. American Safety Indemnity Co.* (2017) 14 Cal.App.5th 1086 and *McMillin Management Services, L.P. v. Financial Pacific Insurance Company* (2017) 17 Cal.App.5th 187.

33. Based on the allegations of the *Niguel Beach* Complaint and facts known to HDI in June 2017, when Del Mar initially tendered its defense, HDI cannot establish the absence of any potentially covered "property damage" occurring during Ontiveros' performance of its operations. For this reason, HDI owes a duty to defend to Del Mar.

34. To date, HDI has not responded to Kinsale's re-tender of Del Mar's defense, and has not paid any amounts to Kinsale in reimbursement of Del Mar's past or ongoing attorneys' and expert's fees and litigation costs in the *Niguel Beach* Action.

# FIRST CAUSE OF ACTION

## (Declaratory Relief – Duty to Defend)

35. Kinsale incorporates herein by reference the allegations contained in paragraphs 1 through 34, inclusive, as if set forth in full herein.

36. Kinsale has incurred, and continues to incur, attorneys' fees, experts' fees, costs and expenses to defend Del Mar in the *Niguel Beach* Action against the claims for "property damage" arising "in whole or in part" from work performed by Ontiveros for Del Mar under the Subcontract. Kinsale alleges that HDI has a duty to defend and indemnify Del Mar against the claims made in the *Niguel Beach* Action.

37. Kinsale contends that:

(a) HDI has, and has had, a primary duty to defend its additional insured, Del Mar, in the *Niguel Beach* Action, without contribution from Kinsale, from and after Del Mar tendered its defense to HDI on June 19, 2017;

(b) HDI is obligated under the terms of the HDI Primary Policy to pay 100% of Del Mar's defense fees and costs incurred in the *Niguel Beach* Action since June 19, 2017; and

(c) Pursuant to Section IV. 4. Other Insurance of the Kinsale Policy, Kinsale's duty to defend Del Mar is excess over HDI's primary duty to defend Del Mar under the HDI Primary Policy under which Del Mar qualifies as an additional insured and which insures Del Mar's liability for damages arising out of its operations.

38. HDI contends that: (i) HDI does not owe a duty to defend its additional insured, Del Mar, in the *Niguel Beach* Action, and (ii) HDI is not required to reimburse Kinsale for defense fees and costs incurred to defense Del Mar, to date.

39. An actual controversy has arisen and now exists between the parties in that Kinsale contends that it is entitled to reimbursement from HDI for all sums incurred from and after June 19, 2017 to defend Del Mar against the claims asserted in the *Niguel Beach* Action. HDI disputes Kinsale's contentions.

40. An adjudication of this controversy is necessary so that the parties may determine their respective obligations under the subject insurance policies.

WHEREFORE, Kinsale prays for judgment as set forth below.

## SECOND CAUSE OF ACTION

### (Equitable Contribution)

41. Kinsale incorporates herein by reference the allegations contained in paragraphs 1 through 40, inclusive, as if set forth in full herein.

42. HDI has, and has had, a duty to defend Del Mar against the claims alleged in the *Niguel Beach* Action since June 19, 2017, but has failed to meet its obligation to timely accept Del Mar's tender of defense. By reason of HDI's failure to defend Del Mar, Kinsale has incurred attorneys' fees, experts' fees and litigation costs reasonably and necessarily required to defend Del Mar in the *Niguel Beach* Action, and in excess of its fair share of the parties' common obligation to their common insured. Accordingly, Kinsale seeks equitable contribution from HDI, who should be ordered to reimburse and pay Kinsale for sums paid by Kinsale to defend and indemnify Del Mar.

WHEREFORE, Kinsale prays for judgment as set forth below.

## PRAYER

Kinsale prays for judgment as follows:

*AS TO THE FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF:*

1. For judicial declarations and order(s) that:

    a. HDI has, and has had, a primary duty and obligation under the HDI Primary Policy to defend Del Mar in the *Niguel Beach* Action from and after June 19, 2017;

    b. The Kinsale Policy is excess over and shall not be required to contribute to payment of Del Mar's defense and expert fees and litigation costs unless and until the HDI Primary Policy is exhausted.

*AS TO THE SECOND CAUSE OF ACTION FOR EQUITABLE CONTRIBUTION:*

2. For Judgment in favor of Kinsale and against HDI for equitable contribution, and requiring HDI to pay to Kinsale all amounts that Kinsale has paid to defend Del Mar in the *Niguel Beach* Action which exceed Kinsale's equitable share;

*AS TO ALL CAUSES OF ACTION:*

3. For an award to Kinsale of prejudgment interest on the sums that HDI is required to pay to Kinsale, calculated from the date that each payment was made by Kinsale for Del Mar's defense and expert fees and litigation costs;

4. For an award to Kinsale of its costs incurred in this litigation; and

5. For an award to Kinsale of such other and further relief as it may deem just and proper.

Dated: June 14, 2019                    SELVIN WRAITH HALMAN LLP


                                        By: s/ *Susan F. Halman*
                                            Susan F. Halman
                                            Elizabeth A. Doyle
                                            Attorneys for Plaintiff
                                            KINSALE INSURANCE COMPANY

297176